IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-20326-CIV-MOORE/GARBER

PEPSICO, INC., a corporation,

    Plaintiff,

vs.

DISTRIBUIDORA LA MATAGALPA, INC.,

    Defendant.
_____/

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; ENTERING DEFAULT JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Motion for Default Judgment (DE # 22).

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### PARTIES AND JURISDICTION

PepsiCo is a North Carolina corporation with its principal place of business in New York. Distribuidora is a corporation governed by the laws of the State of Florida with its principal place of business in this judicial district.

This Court has jurisdiction because: (1) this action arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051-1141 (the "Lanham Act"), and jurisdiction is proper in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b); and (2) this is a civil action between citizens of different states and the value of the amount in controversy exclusive of interest and cost exceeds seventy-five thousand dollars ($75,000.00), and jurisdiction therefore is proper in accordance with

1

28 U.S.C. § 1332. Jurisdiction for the Florida statutory and common law claims is proper in accordance with the principles of supplemental jurisdiction. 28 U.S.C. § 1367(a).

## FINDINGS OF FACT

PepsiCo filed the Complaint in this action on February 7, 2007, to assert claims against Distribuidora based on its unauthorized sale within the United States of materially different soft drinks bearing the PEPSI marks that were manufactured in Nicaragua and other countries in Central and/or South America ("Foreign Product"). The well-pleaded allegations of PepsiCo's Complaint show that Distribuidora's unauthorized sales are likely to cause consumer confusion.

On February 12, 2007, PepsiCo served Distribuidora's registered agent with the Summons and Complaint ("Complaint"), together with a letter inviting a quick and amicable resolution to the dispute. (See Docket #12). Distribuidora never responded to PepsiCo's Complaint and did not otherwise appear in this litigation. PepsiCo filed a Request to Enter Default with the Clerk of the Court on March 15, 2007. The Clerk entered default against Distribuidora on March 20, 2007.

PepsiCo has alleged that it manufactures, markets and distributes carbonated soft drinks throughout the United States. PepsiCo has pleaded continuous use of the trademarks PEPSI, PEPSI-COLA, a distinctive red, white and blue logo, as well as combinations of and/or variations on this logo with PEPSI and PEPSI-COLA (collectively the "PEPSI marks") in connection with the sale and advertising of cola-flavored soft drinks (collectively "PEPSI products"). PepsiCo also has alleged that it and its authorized bottlers have sold billions of dollars worth of PEPSI products under the PEPSI marks throughout the United States and has spent hundreds of millions of dollars to advertise and to promote the PEPSI products under the PEPSI marks.

PepsiCo has pleaded its ownership of several trademark registrations issued by the United States Patent and Trademark Office ("USPTO") for the PEPSI marks including: (i) PEPSI (Reg. No. 824,150) issued on February 14, 1967, for soft drinks and syrups and concentrates for the preparation thereof; (ii) PEPSI-COLA (Reg. No. 824,151) issued on February 14, 1967, for soft drinks and syrups and concentrates for the preparation thereof; (iii) PEPSI and Design (Reg. No. 2,100,417) issued on September 23, 1997, for soft drinks; and (iv) PEPSI and Design (Reg. No. 2,104,304) issued on October 7, 1997, for soft drinks. These registrations are valid and incontestable under 15 U.S.C. §§ 1065 and 1115(b).

PepsiCo has alleged that its extensive sales, promotion and advertising have caused the PEPSI marks to become famous, and that the PEPSI marks represent highly valuable goodwill owned by PepsiCo.

PepsiCo has alleged that PEPSI products are bottled and distributed in the United States by PepsiCo's authorized bottlers pursuant to agreements that authorize those bottlers, and no one else, to bottle and distribute PEPSI products in their respective territories. PepsiCo also has alleged that it appoints exclusive bottlers for specific territories to maintain the quality and enhance the goodwill that consumers associate with PEPSI products within each particular territory.

PepsiCo has alleged that Distribuidora has sold Foreign Product in the United States and in the State of Florida, including in this judicial district. PepsiCo has also alleged that the Foreign Product is subject to bottling agreements that restrict sales of the Foreign Product to Nicaragua and other countries in Central and/or South America, and that PepsiCo neither authorized nor intended to allow for its importation into, or sale or distribution in, the United States. PepsiCo has not authorized or consented to Distribuidora's sale of Foreign Product within the United States.

PepsiCo has alleged that the Foreign Product that Distribuidora sells within the United States is materially different in many respects from the authorized PEPSI products bottled and sold in the United States. The Complaint sets forth the material differences between Distribuidora's unauthorized Foreign Product and authorized domestic PEPSI products, including, but not limited to, the following: (i) the Foreign Product's labeling does not comply with United States Food and Drug Administration labeling requirements or the labeling standards that PepsiCo sets for its authorized bottlers in the United States; (ii) the Foreign Product's packaging does not inform purchasers of PepsiCo's promotional efforts and does not allow purchasers of Foreign Product to participate in those promotions; (iii) the hazards and delay inherent in re-importation present a risk of leakage, loss of carbonation and general deterioration of the Foreign Product; and (iv) the Foreign Product sells in bottles that are not available in the United States and that bear writing in Spanish. According to PepsiCo's well-pleaded allegations, Distribuidora's importation and sale of the Foreign Product is likely to confuse consumers.

PepsiCo shows that Distribuidora's sale of Foreign Products in the United States without PepsiCo's consent constitutes: (i) trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); (iii) deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. ANN. §§ 501.201-213 ("FUTPA"); and (iv) trademark infringement and unfair competition in violation of Florida common law. PepsiCo seeks a permanent injunction against all importation and sale of Foreign Product but has waived its original claim for damages and attorneys' fees.

## FINDINGS OF LAW

The Court may enter judgment by default against a party for failure to prosecute with reasonable diligence or to comply with the Court's orders or the rules of procedure. *Owens v. Benton*, No. 05-13782, 2006 WL 1824153, at *1 (11th Cir. July 5, 2006); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). The entry of a default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." FED. R. CIV. P. 55(a).

In defaulting, Distribuidora has admitted PepsiCo's well-pleaded allegations of fact. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *accord PetMed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). To establish the merits of its claims for trademark infringement and unfair competition under the Lanham Act, PepsiCo must demonstrate that (1) the PEPSI marks have priority; (2) Distribuidora used the PEPSI marks in commerce; and (3) Distribuidora's use of the PEPSI marks is likely to cause consumer confusion. *Davidoff & CIE, S.A. v. PDL Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). Florida common law trademark infringement follows the same analysis. *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

The Florida Deceptive and Unfair Trade Practices Act also prohibits Distribuidora's conduct. *See* FLA. STAT. ANN. § 501.211(1). The 2001 amendments to FUTPA confirmed its protection of any person (competitors and consumers alike) against unfair trade practices. *Sun Protection Factory, Inc. v. Tender Corp.*, No. 604-CV-7320RL19KRS, 2005 WL 2484710, at *13-14 (M.D. Fla. Oct. 7, 2005); *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, No. 803-CV-2671T30MAP, 2005 WL

1313829, at *7 (M.D. Fla. May 31, 2005) (analysis of FUTPA claim is the same as for Lanham Act claim). Even before the amendments, the law long has recognized that trademark infringement and unfair competition are considered to be unfair and deceptive trade practices in violation of FUTPA. *E.g., Laboratorios Roldan v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1569-70 (S.D. Fla. 1995) (explaining that intentionally palming off or passing off products is the type of behavior that FUTPA prohibits); *Big Tomato v. Tasty Concept, Inc.*, 972 F. Supp. 662, 664 (S.D. Fla. 1997) (FUTPA provides for injunctive relief against continued trademark infringement); *Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990); *General Time Corp. v. Big Ben*, 1 U.S.P.Q.2d 1239 (S.D. Fla. 1986).

In sum, a showing that Distribuidora's conduct constitutes trademark infringement is central to the legal analysis of all of PepsiCo's federal and state law claims.

A.   **PepsiCo Owns The PEPSI Marks.**

PepsiCo's incontestable United States trademark registrations conclusively establish its ownership of and exclusive rights in the PEPSI marks. 15 U.S.C. §§ 1065 and 1115(b); *Park 'N Fly v. Dollar Park and Fly Inc.*, 469 U.S. 189, 194 (1985). PepsiCo's long use and extensive advertising and promotion of the PEPSI marks have made them among the most famous marks in the world. *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d. 1172, 1173, (C.D. Cal. 2002).

B.   **Distribuidora's Conduct Infringes The PEPSI Marks.**

As the Eleventh Circuit has noted, the Lanham Act exists to protect consumers from confusion and to protect the investment of trademark owners in their brands. *Davidoff*, 263 F.3d at 1301. At their core, trademark and unfair competition laws recognize that "[e]very product is composed of a bundle of special characteristics." *Id.* (*citing Societe Des Produits Nestlé, S.A. v.*

*Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992) ("Nestlé")). Consumers use brands to ensure that they obtain the same special characteristics every time they purchase a product. *Id.* In preventing third parties from using marks they do not own, the law protects consumers' expectations by allowing them to continue to purchase brands and trust the association they have with those brands without being confused or misled. *Id. See* 15 U.S.C. § 1114(1); *Nestlé*, 982 F.2d at 636; *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 75 (2d Cir. 1987).

At the same time, the Lanham Act also protects the time, energy and money that trademark owners invest in presenting a product to consumers and building that product's reputation. *Id. See also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942). The law prohibits another vendor from passing off as the trademark owner's good a product that has a different set of characteristics. *Id. See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 778 (1992) (Stevens, J., concurring) (noting that passing off is a form of infringement prohibited by the Lanham Act). These practices confuse consumers about the quality and nature of the branded product and erode consumer goodwill. *Davidoff*, 263 F.3d at 1301; *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998); *Nestlé*, 982 F.2d at 638.

Accordingly, a person who sells trademarked goods that differ materially from those sold by the trademark owner violates the trademark laws because the materially different product is not in fact genuine, and its unauthorized sale therefore constitutes trademark infringement. *Davidoff*, 263 F.3d at 1302 ("[M]aterially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark.") *See also Nestlé*, 982 F.2d at 644; *Original Appalachian Artworks*, 816 F.2d at 73; *Iberia Foods*, 150 F.3d at 302-3 (3d Cir. 1998); *Martin's*

*Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1302 (5th Cir. 1997). This rule furthers the purposes of the Lanham Act and of FUTPA.

Here, Distribuidora's unauthorized importation of materially different Foreign Product is likely to cause confusion among consumers as to the source of the Foreign Product and thereby damage the goodwill in PepsiCo's famous PEPSI marks. *See* 15 U.S.C. § 1114. *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248-49 (11th Cir. 2002); *accord PetMed*, 336 F. Supp. 2d at 1217. The courts routinely enforce the trademark laws to prohibit this kind of infringing conduct. *E.g., Stiefel Labs., Inc. v. Gelenium USA, LLC*, No. 05-23108 CIV, 2006 WL 1548008, at *2 (S.D. Fla. May 2, 2006) (court enjoined defaulting trademark infringement defendant); *PetMed*, 336 F. Supp. 2d at 1217 (same); *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (default judgment enjoining defendant's unauthorized importation of Mexican PEPSI product that had the same material differences from PepsiCo's domestic PEPSI product as the Foreign Products at issue here); *PepsiCo, Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059-60 (C.D. Cal. 1999) (finding similar differences between Mexican PEPSI product and PepsiCo's authorized domestic PEPSI product to be material and likely to cause consumer confusion). Indeed, this Court recently granted a default judgment with injunctive relief in a similar case brought by PepsiCo against another defendant's unauthorized sale of Foreign Product. *PepsiCo, Inc. v. Productos Nicaraguenses Corp.*, No. 06-21305-CIV-GOLD, 2006 WL 3940591, at *3 (S.D. Fla. Dec. 22, 2006).

In sum, the statutory and legal authorities set forth above confirm that Distribuidora's sale in the United States of Foreign Product that is materially different from authorized domestic PEPSI product infringes the PEPSI marks and constitutes: (i) trademark infringement in violation of Section

32 of the Lanham Act, 15 U.S.C. § 1114; (ii) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); (iii) an unfair and deceptive trade practice that violates FUTPA; and (iv) trademark infringement and unfair competition in violation of Florida common law.

### C.    An Injunction Is Proper.

Because its trademark rights have been infringed, PepsiCo undeniably would be prejudiced absent the entry of permanent injunctive relief with this default judgment. Otherwise, Distribuidora will continue to sell Foreign Product that consumers mistake for PepsiCo's authorized domestic PEPSI products, and the damage to PepsiCo's goodwill in its PEPSI marks will be irreparable. *PepsiCo, Inc. v. Reyes*, 70 F. Supp. 2d at 1060 (trademark infringement and unfair competition by their very nature result in irreparable injury because of the attendant loss of goodwill, reputation and business); *PepsiCo, Inc. v. Nostalgia Products Corp.*, 18 U.S.P.Q.2d 1404, 1407 (N.D. Ill. 1990) (same); *see also United States v. Kahn*, 164 Fed. Appx. 855, 858-59 (11th Cir. 2006) (granting injunction where facts established by default found to warrant such a remedy); *Sony Music Entertainment v. Global Arts Productions*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999) (granting injunction in copyright infringement case by default after finding that plaintiff had established elements necessary for injunctive relief); *KEG Techs., Inc. v. Laimer,* 436 F. Supp. 2d 1364, 1374-75 (N. D. Ga. 2006) (granting injunctive relief by default where plaintiff showed likelihood of confusion in the marketplace).

### CONCLUSION

For the foregoing reasons and in the interest of both preventing prejudice to PepsiCo and protecting the public's interest against the propagation of consumer confusion, injunctive relief in this case is both proper and necessary.

Accordingly, the Court HEREBY ORDERS that Distribuidora, its officers, agents, servants, employees, successors and assigns, and all others in active concert or participation with them, are permanently enjoined and restrained from the importation into, and the dealing, marketing, sale or distribution in the United States of soft drinks manufactured or bottled in Nicaragua or any other foreign country bearing PepsiCo's trademarks, PEPSI, PEPSI-COLA, the distinctive red, white and blue logo, and combinations of variations on this logo with PEPSI and PEPSI-COLA.

This Court shall retain jurisdiction over this action for purposes of construing and ensuring compliance with this Judgment.

SO ORDERED AND ADJUDGED:

Dated: *June 4th, 2007*

*/s/ K. Michael Moore*
Honorable K. Michael Moore
United States District Judge